## SCHLENK v. LEHIGH VALLEY R. CO.
### Civ. 8390.

District Court, D. New Jersey.

Dec. 3, 1947.

Archie Elkins, of Jersey City, N. J., for complainant.

Collins & Corbin, of Jersey City, N. J., for defendant.

MEANEY, District Judge.

The complainant, a married woman, seeks by this action to compel the defendant, Lehigh Valley Railroad Company, to reinstate her to her former position as chief telephone operator at the Johnston Avenue office of said defendant company or to such other position as she may be entitled to. She seeks also the restoration of her seniority rights and her pension rights under the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., as of February 15, 1939, as well as to such other relief as the court may find her entitled to.

Mrs. Schlenk, the complainant herein, entered upon her employment with the defendant in August of 1919 as a telephone operator, she being at that time a widow. In 1926 she became chief telephone operator at the Johnston Avenue office and in 1928 she married her present husband. The fact of the marriage was never concealed and there is no dispute concerning the defendant's knowledge of her marital status. In November of 1936, complainant's husband began work for the defendant company and continued so employed until June, 1944.

In January 1939 the complainant learned that the defendant contemplated placing her on the furlough list because of the so-called married women's rule, and on February 15, 1939, complainant received notice that she was relieved from service "account of rule governing employment of married women." Over her protests she was then placed on the furloughed employees list. She made continued efforts thereafter to be reinstated actively in her former employment.

On July 10, 1944, Mrs. Schlenk was notified to return to work, but at the conclusion of the second day's work she was advised that her work was concluded and that she was, as she terms it, "let out". Shortly thereafter, she alleges that she was advised that her original release in 1939 was a discharge from employment. Complainant thereafter instituted suit.

Complainant's original release from her service with the defendant railroad and her relegation to the furlough lists were based upon written agreements containing the so-called married women's rules, entered into on February 16, 1933, between the defendant company and the Association of Lehigh Valley Railroad Clerks. The rules related to clerical positions held by

570

married women whose husbands are employed. The agreement, which was a supplement to an earlier written agreement between the railroad and the clerks and other office and station employees of the railroad represented by the Association, in part provided:

"It is agreed that all married women holding clerical positions whose husbands are employed, will be furloughed. The names of these employees will continue on the roster. If and when their status changes, their re-entry into service may be permitted.

"It is agreed that employees filling the positions in connection with the above temporary arrangement will establish no seniority at any point other than their original seniority district and that the operation of this arrangement will give no right of displacement to employees affected thereby.

"It is understood and agreed that this is a temporary arrangement to the existing schedule and all rules, clauses, amendments and established practices are to continue in effect."

Subsequently, on January 14, 1936, the above rules pertaining to the furloughing of married women were amended insofar as they were related to the method of filling positions vacated under the said rules. Notices of the amendments were sent to department heads (upon whom lay the duty of enforcing the terms of the agreement), with instructions to carry out the rules as amended.

Thereafter, in April 1937, a representation dispute erupted between the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter called the Brotherhood), and the Association of Lehigh Valley Railroad Clerks (hereinafter called the Association), at which time the matter was carried to the National Mediation Board to determine who was the bargaining agent for the clerical employees. The Board issued a "Findings to Determine Eligible List", and prepared to proceed to a determination by secret ballot, when the mediator was advised by the parties that the question had been disposed of. The Board thereupon dismissed the proceedings without determination.

Nonetheless, on June 23, 1937, the defendant railroad recognized and designated the Brotherhood as the bargaining agent and representative of the clerical employees of the railroad in place of the Association, despite the fact that there had been no election under the auspices of the National Mediation Board.

In 1939, a new agreement was entered into between the Defendant Railroad and the Brotherhood, the effective date of which was March 1, 1939. Pending the effective date of the new agreement, it had been agreed that the Association rules would prevail.

After the Agreement of 1939 had been concluded, the application of rule 47B thereof was discussed between the Brotherhood and the railroad and it was then orally agreed that this rule should apply to furloughed married women, and in March of 1940 a letter so stating was signed by a representative of the Brotherhood. Thus, while the Agreement of 1939 said nothing about furloughing married women, there was in effect a tacit recognition by the Brotherhood that the rules relative to the furloughing of married women were to be continued in effect. Subsequently, in the early or middle part of 1943, the rules applying to the employment of married women were suspended as a result of war time conditions. During the period of suspension, married women were no longer furloughed and the defendant company hired new women employees without restriction insofar as their marital status was concerned. Finally, on March 8, 1945, the defendant railroad in a letter to the Brotherhood agreed to the complete abrogation of the supplementary agreements of 1933 and 1936, thereby making the temporary suspension of the married women's rules a permanent abolishment thereof. Meanwhile, in 1941, in the case of Dooley et al. v. Lehigh Valley Railroad Company of Pennsylvania, 130 N.J.Eq. 75, 21 A.2d 334, 341, the Court of Chancery of New Jersey specifically found that the recognition of

the Brotherhood as the bargaining agent by the Railroad was "obviously unjustified, an arbitrary assumption of authority and a direct violation" of the Railway Labor Act, 45 U.S.C.A. § 151 et seq.

Thereafter, on March 24, 1943, the National Mediation Board in Case No. R-1022, after investigation, certified the Brotherhood of Railway and Steamship Clerks as the duly designated and authorized agency to represent the employees of the defendant railroad.

From the facts as they thus appear, it seems evident that both of the bargaining agencies had or adopted the same rules governing the release by furlough of married women whose husbands were employed. The Association specifically set forth those rules in the supplement of 1933 and the amendment thereto in 1936, and the Brotherhood by implication as well as by direct oral reference adopted them. Until 1943, however, when the National Mediation Board recognized the Brotherhood as supplanting the Association as the employee's bargaining agent, it would seem apparent that the Brotherhood had no de jure standing as a representative agent, indeed the Dooley case, supra, so held.

■ Nevertheless, whether one or the other of the agencies is sought to be established as the proper and authorized representative of the employees is not of great moment at this time, the court having found that both agencies had the same agreements governing the employment of married women. Under either, the outcome is the same. Until the rules relating to the employment of married women were suspended in 1943 and finally abrogated in 1945, they remained in full force and effect and were binding on this complainant as well as on the defendant, even though she individually suffered some hurt as a result. Such a collective bargaining agreement is the joint and several contract of the members of the union, made by the officers of the union as their agents, and is enforceable against one for whose general benefit such agreement was made, even though it resulted in no benefit to such individual. Hartley v. Brotherhood of Railway and Steamship Clerks, etc., 283 Mich. 201, 277 N.W. 885.

■ The court is satisfied, from the evidence adduced at the trial of the issues herein, that the complainant's initial release from service was in accordance with and in compliance with the rules governing the employment of married women under the 1933 supplementary agreement and the amendments thereto in 1936, and that her release was in the nature of a furlough rather than a discharge from service. During such period of furlough, Mrs. Schlenk retained such senority rights as she had on the date of her release on February 15, 1939. She retained as well her pension rights as of that date. During such period as the complainant was properly on the furlough lists she acquired no additional rights or advanced seniority standing. Until the date of the temporary suspension of the said married women's rules, complainant's status as a furloughed employee was proper and in no way a violation of her rights under Association or Brotherhood employee's agreements with the defendant, Lehigh Valley Railroad.

On the date when the said rules were temporarily suspended (the exact date does not appear) Mrs. Schlenk became entitled to restoration to her former position with the defendant company in accordance with the order of her seniority standing. At that time she became entitled to restoration, retaining all the rights she had on the date of her furlough in 1939. Since the evidence relating to the complainant's standing in the order of recall to service, and evidence of any improper placements of persons of a lessor seniority status, does not appear before the court, no final determination of the precise date on which Mrs. Schlenk should have been reinstated can be made and hence no final determination of pecuniary loss may be made. Since these questions are matters capable of exact calculation, in view of the above determination, counsel will prepare an agreed stipulation of fact pertaining to the questions left undetermined. There will further be taken into consideration in mitigation of such monies found to be due Mrs. Schlenk

**572**

under these determinations, such sums as she may have earned in other occupations during the time when she may be found to have been entitled to reinstatement, in accordance with the court's finding. Upon the filing of such stipulation, a final determination of this matter will be made and an order for judgment may then be submitted.